1  Yosef Peretz (SBN 209288)
   yperetz@peretzlaw.com
2  Shane Howarter (SBN 311970)
   showarter@peretzlaw.com
3  PERETZ & ASSOCIATES
   22 Battery Street, Suite 200
4  San Francisco, California 94111
   Telephone: (415) 732-3777
5  Facsimile: (415) 732-3791

6  Attorneys for Plaintiff JOHN ADEMOLA

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 | JOHN ADEMOLA, an individual,         | Case No.
11 |                                       |
   |                    Plaintiff,         | **COMPLAINT AND DEMAND**
12 |                                       | **FOR A JURY TRIAL**
   | v.                                    |
13 |                                       | 1. Breach of Contract;
   | ESTEE LAUDER, INC., a Delaware        | 2. Breach of Implied Contract;
14 | corporation; and DOES 1-10,           | 3. Breach of Covenant of Good Faith and Fair Dealing;
15 |                                       | 4. Failure to Pay the Minimum Wage in Violation of California Labor Code § 1182.12;
   |                    Defendant.         | 5. Failure to Pay Minimum Wage in Violation of City and Country of San Francisco Minimum Wage Ordinance;
16 |                                       | 6. Failure to Reimburse Required Business Expenses in Violation of California Labor Code § 2802;
17 |                                       | 7. Penalties for Failure to Pay Earned Wages upon Discharge pursuant to California Labor Code § 203;
18 |                                       | 8. Penalties for Failure to Furnish Timely and Accurate Wage Statements Pursuant to California Labor Code § 226; and
19 |                                       | 9. Unlawful and/or Unfair Business Practices in Violation of California Bus. & Prof. Code §§ 17200, *et seq*.

Plaintiff JOHN ADEMOLA ("Plaintiff") alleges the following:

## I. INTRODUCTION

1. This is an action brought by Plaintiff against Defendant ESTEE LAUDER, INC. ("Defendant") and DOES 1-20 (collectively, "Defendants"), in connection with claims arising from Plaintiff's agreements and employment with Defendant.

2. Defendant breached its agreements with Plaintiff by failing to pay him as required by the contract between the parties. Defendant also violated California law for over nine years by misclassifying Plaintiff as an independent contractor when he is, in fact, an employee.

3. Due to this unlawful misclassification, Defendant has violated numerous provisions of the California Labor Code and California law, including but not limited to the denial of benefits to covered employees in breach of contract between Defendant and Plaintiff as its employee, failure to make contributions and payments for taxes and withholding to federal and state agencies, to adequately reimburse Plaintiff for business expenditures incurred and required by his job, and failure to furnish itemized pay statements.

4. Plaintiff therefore seeks damages, injunctive and declaratory relief, penalties and interest, as well as attorneys' fees and costs for Defendant's wrongful conduct.

## II. JURISDICTION

5. Jurisdiction over Plaintiff's claims is proper under 28 U.S.C. § 1332 as Plaintiff is a citizen of the State of California and Defendant is incorporated in the State of Delaware and Defendant's principle place of business is in the State of New York, and the amount in controversy exceeds $75,000, exclusive of interest and cost.

## III. VENUE

6. Venue is proper in the United States District Court, Northern District of California, pursuant to 28 U.S.C. §1391 because Defendant is doing business in this District and a substantial part of the events and omissions giving rise to Plaintiff's action occurred in this District.

## IV. PARTIES

7. Plaintiff is a resident of San Francisco, California. In 2010, Plaintiff entered into an employment agreement with Defendant to work as a "Consultant" for Defendant.

8. Defendant is a corporation incorporated in Delaware, with its principal place of business in New York, New York. Upon information and belief, Defendant heavily conducts

business in the State of California.  Defendant conducts business in California wherein the conduct that gave rise to the present action occurred.

9. Does 1 through 10 are defendants whose names are unknown and who shall be named once their identities are ascertained.  Plaintiff is informed, believes, and thereon alleges that each of the Defendants designated as a Doe is responsible in some manner for the events and happenings herein, and that his injuries and damages as hereinafter set forth were proximately caused by said Defendants.  Plaintiff does not at this time know the true names or capacities of said unnamed Defendants, but he prays that the same may be inserted herein when ascertained.  These said Defendants are in some way liable for the damages sustained by Plaintiff.

10. Upon information and belief, Defendants Does 1 through 10 acted with and on behalf of Defendant in the alleged violations.  Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants was the agent and/or employee of each of the remaining Defendants, and each of them, was at all times acting within the purpose and scope of such agency and/or employment.

V.   **FACTUAL ALLEGATIONS**

11. Defendant is in the business of manufacturing and selling skincare, makeup, fragrance and hair products.  It holds very strong ties with California through many businesses in the State of California.

12. Plaintiff is experienced in creating and setting up cosmetic laboratories for testing facilities.

13. On August 8, 2010, Plaintiff was retained as a "Consultant" upon entering into an agreement titled Consulting Term Agreement (the "Contract") with Defendant.  A true and correct copy of the Contract is attached hereto as **Exhibit 1**.

14. As a Consultant under the Contract, Plaintiff was expected to provide services with respect to the procurement, set up, operation, and administration of creating cosmetic testing laboratories in primarily San Francisco, California, but also in China.  *See* **Exhibit 1** at Exhibit A at p. 4.

15. Pursuant to the Contract, Defendant agreed to pay Plaintiff a yearly salary of $72,000.  *See* **Exhibit 1** at p. 1 "Payments".

16. The initial term of the Contract was to end on June 30, 2013, but, "[t]hereafter the Term shall automatically renew on a fiscal year basis unless terminated as set forth herein. *See* **Exhibit 1** at p. 1 "Term".

17. Neither party had ever terminated the Contract to date as set forth in the Contract, which mandates that the "Term may be terminated by ELI [Defendant] at any time for any reason upon ninety days (90) days written notice." *See* **Exhibit 1** at p. 1 "Termination".

18. Defendant never provided Plaintiff any notice, whether written or oral, that the term of the Contract was terminated, and therefore the Contract's term was extended to the current "fiscal year" of Defendant.

19. The Contract improperly classified Plaintiff as an independent contractor, while requiring Plaintiff to only provide his consulting services to Defendant. The Contract's exclusivity provision explicitly prohibits consulting services to any other entity in the same field of consulting services. *See* **Exhibit 1** at p. 2 "Exclusivity".

20. During the course of Plaintiff's employment, Defendant exercised extensive and exclusive control over the manner and means by which Plaintiff performed his job. Any and all variation to his work and traveling schedule was required to be approved and authorized by Defendant. In addition, Plaintiff was required to get approval from Defendant for any time off, Defendant provided the locations where Plaintiff was required to set up the testing laboratories, and Defendant controlled the requirements and instructions of setting up the laboratories and the type of work the laboratories needed to perform to satisfy Defendant's clinical studies. Defendant also retained the ability to terminate Plaintiff at will.

21. Plaintiff was responsible for hiring contractors and staff for the laboratories. However, Defendant retained exclusive control over who would be placed in the laboratories' director positions.

22. Defendant's pervasive control over Plaintiff included, but was not limited to, the following:

    a. Plaintiff hired laboratory supervisors who were assigned at the discretion of Defendant only;

    b. Defendant strictly supervised Plaintiff's work and routinely exercised its authority over him;

      c.      Plaintiff had no other "consulting" contracts apart from Defendant because Defendant prohibited him from retaining other consulting jobs;

      d.      Plaintiff's work schedule and timing of set up for laboratories was not at his discretion but dictated by Defendant; and

      e.      Defendant gave instructions to of the kind of lab they wanted Plaintiff to construct or supervise.

23. Defendant has failed to pay Plaintiff's wages or any payments under the Contract to date. Due to Defendant's failure to pay Plaintiff under the Contract, Plaintiff sues for breach of contract and violations of the California Labor Code against Defendant.

24. As a consequence of being misclassified as an independent contractor, Plaintiff was not provided with the benefits that were provided to other employees of Defendant including, but not limited to, vacation and sick leave pay, health insurance, 401(k) contributions, holiday pay, and reimbursement for business expenses, in violation of various provisions of the California Labor Code.

### FIRST CAUSE OF ACTION
### Breach of Contract
### (Alleged against all Defendants)

25. Plaintiff repeats and re-alleges all of the previous allegations in paragraphs 1-24 herein by reference.

26. Plaintiff entered into an express contract for employment with Defendant wherein he was entitled to wages, benefits, expenses reimbursements for business and travel to Defendant's testing facilities.

27. Plaintiff entered into an express contract for employment with Defendant wherein he was entitled to seventy-two thousand dollars ($72,000) per fiscal year.

28. Plaintiff performed all of his obligations under the Contract, including by providing his services to Defendant.

29. As a result of entering into the Contract, Plaintiff came to reasonably expect that he would receive all the moneys and consideration that were promised to him by Defendant pursuant to the Contract.

30. Defendant breached the Contract with Plaintiff when it failed to pay the moneys and provide all the consideration owed to him.

31. As a direct and proximate cause of the unlawful conduct of Defendant against

Plaintiff, Plaintiff has suffered special, actual, compensatory and/or nominal damages in amounts to be determined at trial.

32. Plaintiff is entitled to an award of costs and reasonable attorneys' fees for Defendants for this cause of action, *inter alia*, under Labor Code §§ 218.5 and 2802(c).

## SECOND CAUSE OF ACTION
### Breach of Implied Contract
### (Alleged against all Defendants)

33. Plaintiff repeats and re-alleges all of the previous allegations in paragraphs 1-32 herein by reference.

34. Defendant's policies, practices, and procedures established that Defendant provided certain benefits to all employees.

35. The totality of the circumstances surrounding Plaintiff's employment established an implied-in-fact contract by which Defendant was obligated to provide Plaintiff with the same benefits it provides to other employees, including but not limited to health insurance, retirement benefits, disability benefits, vacation, sick pay and holiday pay, as well as payments of taxes and withholdings made for employees by their employer.

36. Defendant nevertheless and without cause breached this implied contract with Plaintiff by failing to pay the moneys and provide all the consideration owed to him.

37. As a proximate result of Defendant's actions of misclassifying Plaintiff's employment, Plaintiff has suffered a loss of benefits and wages in an amount according to proof at trial.

38. Plaintiff is entitled to an award of costs and reasonable attorneys' fees for Defendants for this cause of action, *inter alia*, under Labor Code §§ 218.5 and 2802(c).

## THIRD CAUSE OF ACTION
### Breach of Covenant of Good Faith and Fair Dealing
### (Alleged against all Defendants)

39. Plaintiff repeats and re-alleges all of the previous allegations in paragraphs 1-38 herein by reference.

40. The terms of Plaintiff's employment are subject to Defendant's policies, practices and procedures, which are in effect a part of the agreement between Defendant and Plaintiff.

41. Inherent in the contractual relationship in the agreement is the covenant of good faith and fair dealing, which implies a promise that each party will refrain from doing anything

to injure the other's right to receive the benefits of the agreements between the parties, and which protects the parties' reasonable expectations. Specifically, the courts have recognized the duty of an employer to act in "good faith" in the employment context and the employee's right to recover damages for violation of the covenant of good faith and fair dealing by his or her employer.

42. Defendants have violated the covenant of good faith and fair dealing when it refused to pay Plaintiff all of the benefits owed to him or for him as part of his employment and failed to reimburse him for him business expenses.

43. As a direct and proximate cause of the unlawful conduct of Defendants against Plaintiff, as set forth above, Plaintiff has suffered special, actual, compensatory and/or nominal damages in amounts to be determined at trial.

44. Plaintiff is entitled to an award of costs and reasonable attorneys' fees for Defendants for this cause of action, *inter alia*, under Labor Code §§ 218.5 and 2802(c).

## FORTH CAUSE OF ACTION
### Failure to Pay the Minimum Wage in Violation of Labor Code § 1182.12
### (Alleged against all Defendants)

45. Plaintiff repeats and re-alleges all of the previous allegations in paragraphs 1-44 herein by reference.

46. Any employee in California should be paid a minimum wage of $9.00 per hour for work performed between July 1, 2014 and January 1, 2016 and $10.00 an hour for work performed between January 1, 2016 and December 31, 2016. California Labor Code § 1182.12(a). The minimum wage required to be paid to an employee from January 1, 2017 to the present incrementally increases depending on the amounts of employees that an employer has, but it was more than $10 per hour. *Id.*

47. Defendant never made any payments to Plaintiff under the Contract, therefore, it never paid to him the minimum wage requirement under California law.

48. As a direct and proximate cause of the unlawful conduct of Defendants against Plaintiff, as set forth above, Plaintiff has suffered special, actual, compensatory and/or nominal damages in amounts to be determined at trial.

49. In any action to recover wages because of the payment of a wage less than the minimum wage, an employee shall also be entitled to recover liquidated damages in an amount

equal to the wages unlawfully unpaid and interest thereon. Labor Code § 1194.2. Accordingly, Plaintiff is entitled to such liquidated damages in an amount to be proven at trial.

50. Any employer who paid or causes to be paid to any employee a wage less than the minimum wage shall also be subject to civil penalties based upon each pay period for which the employee was underpaid and each subsequent violation for the same offense. Labor Code § 1197.1. Accordingly, Plaintiff is also entitled to all civil penalties proscribed by that statute as appropriate, in an amount to be proven at trial.

51. Plaintiff is also entitled to an award of costs and reasonable attorneys' fees for Defendants for this cause of action, *inter alia*, under Labor Code § 1194.

### FIFTH CAUSE OF ACTION
### Failure to Pay Minimum Wage in Violation of SF Wage Ordinance
### (Alleged against all Defendants)

52. Plaintiff repeats and re-alleges all of the previous allegations in paragraphs 1-51 herein by reference.

53. At all times mentioned herein, Defendant were subject to the minimum wage requirements of San Francisco Administrative Code, Section 12R, *et seq.* (the "SF Wage Ordinance").

54. Pursuant to the SF Wage Ordinance, it is unlawful for an employer operating within the geographic boundaries of the City and County of San Francisco to suffer or permit an employee to work without paying wages for all hours worked pursuant to the minimum wage rates set forth in the SF Wage Ordinance for the calendar year in effect.

55. Plaintiff was employed within the geographic boundaries of the City and County of San Francisco, and he performed more than two hours of work each of the weeks when he was employed by Defendants, as required by Section 12R.3 of the SF Wage Ordinance.

56. During his employment with Defendants, Plaintiff was regularly required to work, and in fact worked, as an employee for Defendant, and was not paid at all, much less than the applicable minimum wage by Defendants in violation of Section 12R.4 of the SF Wage Ordinance.

57. Plaintiff was, and at all relevant times, under the control of Defendants, and each of them, and suffered or was permitted to work for Defendants. Defendants' acts and/or omissions in failing to compensate Plaintiff were not in good faith nor were there reasonable grounds for Defendants to believe that their acts and omissions were not contrary to the

mandates of the SF Wage Ordinance to pay employees who work in the City and County of San Francisco a living wage.

58. For all times that Plaintiff worked, he is entitled to not less than the SF Wage Ordinance minimum wage rate.

59. Plaintiff is also entitled to liquidated damages in the amount of $50 for each day or portion thereof that the violation occurred, and he is also entitled to his attorneys' fees and costs pursuant to Section 12R.7(c).

## SIXTH CAUSE OF ACTION
### Failure to Reimburse for Business Expenses
### (Alleged against all Defendants)

60. Plaintiff repeats and re-alleges all of the previous allegations in paragraphs 1-59 herein by reference.

61. Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties".

62. Beginning in 2010, and after Plaintiff was misclassified as an independent contractor, when acting at the direct instruction of Defendant and in order to set up the testing laboratories for Defendant, Plaintiff necessarily incurred substantial expenses as a direct result of performing his job duties for Defendant and in obedience to Defendant's instructions.

63. Defendant has failed and/or refused to indemnify or to reimburse Plaintiff for these expenditures and has knowingly misclassified Plaintiff as an independent contractor.

64. By misclassifying Plaintiff as an independent contractor, and by refusing and failing to reimburse and indemnify Plaintiff for such services, Defendants have violated and continue to violate California Labor Code § 2802.

65. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered substantial losses in an amount to be proven at trial, including pre-judgment interest.

66. Plaintiff is entitled to an award of costs and reasonable attorneys' fees for Defendants for this cause of action, *inter alia*, under Labor Code §§ 218.5 and 2802(c).

## SEVENTH CAUSE OF ACTION
### Failure to Pay Earned Wages upon Discharge
### (Alleged against all Defendants)

67. Plaintiff repeats and re-alleges all of the previous allegations in paragraphs 1-66 herein by reference.

68. Labor Code § 202(a) requires an employer to pay compensation due and owing to the employee immediately upon the ending of the employment relationship.

69. Pursuant to Labor Code § 201(a), vacation pay, paid holidays and personal time off, including sick time constitutes unpaid wages.

70. Defendant did not provide Plaintiff with his full wages or expenses he is owed to date.

71. Labor Code § 203 provides that if an employer willfully fails to pay any wages of an employee who is discharged or quits, the wages of such employee shall continue as from the due date thereof at the same rate until paid or until an action therefore is commenced for not more than 30 days.

72. Plaintiff is entitled to unpaid compensation, including benefits, and incentives which he has not yet been paid and/or provided.

73. Defendant has willfully failed and refused to make full and timely payment of wages owed to Plaintiff.

74. As a direct and proximate result of Defendant's conduct, Defendant is liable to Plaintiff for up to thirty (30) days of waiting time penalties pursuant to Labor Code § 203.

75. Plaintiff is entitled to an award of costs and reasonable attorneys' fees for Defendants for this cause of action, *inter alia*, under Labor Code §§ 218.5.

### EIGHTH CAUSE OF ACTION
### Failure to Furnish Timely and Accurate Itemized Wage Statements
### (Alleged against all Defendants)

76. Plaintiff repeats and re-alleges all of the previous allegations in paragraphs 1-75 herein by reference.

77. Labor Code § 226 requires an employer to furnish its employees with an accurate itemized statement in writing showing, among other things: (a) all applicable hourly rates in effect during each respective pay period and corresponding number of hours worked by each respective individual; (b) total hours worked by each respective individual; (c) gross wages earned; (d) all deductions; (e) inclusive dates of the period for which the employee is paid; (f) the name of the employee and an employee identification or social security number; and (g) the name and address of the legal entity that is the employer.

78. In violation of Labor Code § 226 and after Plaintiff misclassified as a "Consultant" in the Contract on July 28, 2010, Defendant did not provide Plaintiff with accurate itemized wage statements in writing.

79. As a result of Defendant's failure to provide accurate itemized wage statements, Plaintiff suffered actual damages and harm.

80. Pursuant to Labor Code § 226(e), Plaintiff is entitled to recover the greater of all actual damages or fifty dollars ($50.00) for the initial pay period in which a violation occurs and one hundred dollars ($100.00) for each violation in a subsequent pay period not exceeding the aggregate penalty of $4,000.

81. Plaintiff is entitled to an award of costs and reasonable attorneys' fees for Defendants for this cause of action, *inter alia*, under Labor Code § 226(h).

## NINTH CAUSE OF ACTION
### Unlawful and/or Unfair Business Practices
### (Alleged against all Defendants)

82. Plaintiff repeats and re-alleges all of the previous allegations in paragraphs 1-81 herein by reference.

83. The California Business and Professions Code ("B&P Code") § 17200, *et seq.* (the "Unfair Business Practices Act") prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice.

84. B&P Code § 17202 provides that "[n]otwithstanding Section 3369 of the Civil Code, specific or preventative relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition."

85. B&P Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

86. B&P Code § 17204 allows any "person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to prosecute a civil action for violation of this code.

87. B&P Code § 17204 further allows any person acting for the interest of itself, its members or the general public to prosecute a civil action for violation of the Unfair Business Practices Act.

88. Defendants have engaged in acts of unfair competition as defined by the Unfair Business Practices Act, by engaging in the unlawful, unfair and fraudulent practices and acts

described above.

89. The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of the Unfair Business Practices Act.

90. The acts and practices described above have allowed and will allow Defendants to gain an unfair competitive advantage over law-abiding competitors.

91. As a direct and proximate result of the aforementioned acts and practices, Defendants, received and continues to receive, ill-gotten gains at the expense of Defendants' employees and independent consultants.

92. Plaintiff is entitled to restitution pursuant to B&P Code § 17203 for all employment benefits, salary, and/or severance taken from him during the period in which Defendant breached the Contract.

93. Injunctive relief is necessary and appropriate to prevent Defendants from repeating their unlawful, unfair, and fraudulent business acts and practices described herein.

94. Pursuant to the B&P Code § 17203 and/or any other applicable law, Plaintiff seeks an order preventing Defendants from engaging in an unlawful, unfair, and fraudulent conduct, and preventing Defendants from profiting and benefiting from illegal and wrongful acts.

95. Pursuant to the B&P Code § 17202, Plaintiff's success in this action will enforce important rights affecting the public interest.

96. Plaintiff takes upon himself for the enforcement of these laws and prosecution of these lawful claims. There is a financial burden involved in pursuing this action. Because this action is seeking to vindicate an important public right, it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees from any amount recovered from this action.

97. An award of attorneys' fees is appropriate for this cause of action, *inter alia*, pursuant to CCP § 1021.5 and other applicable laws, because: (a) this action will confer a significant benefit upon the general public; (b) there is a financial burden involved in pursuing this action; and (c) it would be against the interest of justice to force Plaintiff to pay attorney's fees from any amount recovered in this action.

//

**JURY DEMAND**

98. Plaintiff hereby demands a trial by jury in this action.

**PRAYER FOR RELIEF**

Plaintiff's pray for relief is as follows:

1. Compensatory damages and restitution in an amount to be proven at trial;
2. General damages in an amount to be proven at trial;
3. Punitive and statutory damages in an amount to be proven at trial;
4. Reasonable attorneys' fees and costs as permitted by law; and
5. All other relief the court deems just and proper.

Dated: December 31, 2019              PERETZ & ASSOCIATES

By: _____
Yosef Peretz
Shane Howarter
Attorneys for Plaintiff JOHN ADEMOLA

**EXHIBIT 1**

Term Sheet – Consulting Agreement

| | |
|---|---|
| Parties: | Estee Lauder Inc. ("ELI") and Dr. John Ademola ("Consultant") |
| Objective: | ELI will retain Consultant to provide consulting services with respect to the procurement, set up, operation and administration of a product testing facility in Shanghai, China ("Testing Facility") that will perform testing of ELI products being developed principally for sale in Asian markets and such other markets as identified by ELI, such duties including those set forth in Exhibit A hereto ("Consulting Services"). |
| Consulting Services: | During the Term Consultant will work no less than 20 hours per month performing Consulting Services at locations to be specified by ELI upon reasonable notice. Consultant will make himself available as requested by ELI. |
| Term: | The initial term of the agreement between Consultant and ELI with respect to Consulting Services (the "Consulting Agreement") shall begin at the date when this term sheet is signed by both parties and shall end on June 30, 2013 ("Term"). Thereafter the Term shall automatically renew on a fiscal year basis unless terminated as set forth herein. |
| Termination: | The Term may be terminated by ELI at any time and for any reason upon ninety days (90) days written notice. |
| Payments: | ELI will pay Consultant a fee of seventy two thousand dollars ($72,000) per fiscal year or pro rata portion thereof for Consulting Services. Consultant's fee shall be paid in equal quarterly installments of eighteen thousand dollars ($18,000). In addition, ELI will pay Consultant's reasonable travel expenses for up to four trips per fiscal year from Consultant's home office in California, U.S.A. to Testing Facility, such expenses subject to ELI's prior written approval and compliance with ELI's internal guidelines regarding reimbursement of business and travel expenses. Consultant will invoice ELI by sending such invoices to: Gavin Kaplan, Vice President, Research and Development Administration, The Estee Lauder Companies Inc., 125 Pinelawn Road, Melville, New York  11747.  gkaplan@estee.com |
| Represen-tations & Warranties: | Consultant represents and warrants that he is available to perform Consulting Services; performance of such services does not conflict with Consultant's obligations to any other entity with which he is affiliated; no entity with which he is affiliated will object to or interfere with Consultant's performance of Consulting Services; no entity will assert any rights contrary to those of ELI; and he is not presently engaged in a consulting relationship with respect to Consulting Services. |

1

Exclusivity: During the Term Consultant will not consult for any other entity in the same field as Consulting Services.

Intellectual Property: Consultant will assign all rights in any data, test results, information or other material generated pursuant to the Consulting Agreement, including any inventions or discoveries, patentable or otherwise, to ELI. In addition, all materials made by Consultant shall be deemed works for hire under the copyright laws of the U.S., and shall be the sole property of ELI.

Confidentiality: Consultant acknowledges and agrees that all information pertaining to ELI or its business, products, formulas, technical information, data, and the like ("Confidential Information") is proprietary to ELI and constitutes ELI's sole property. Due to the highly competitive nature of ELI's business, for a period of 15 years from the termination date of the agreement Consultant agrees not to use or disclose any Confidential Information to any other party without ELI's prior written consent, provided however that any ELI trade secret information must be kept in confidence until ELI provides written authorization for disclosure. Examples of trade secret information shall include, but are not limited to test protocols, test data, reports, results. Consultant will not disclose the nature or existence of the relationship with ELI or the nature or existence of the agreement between the parties, or Consultant's relationship with ELI, all of which shall be considered Confidential Information. At the request of ELI Consultant shall return all Confidential Information and copies thereof to ELI.

Independent Contractor: Consultant's services to ELI pursuant to this agreement shall be performed on an independent contractor basis and as such Consultant shall not be considered an employee of ELI. Nothing herein shall be construed to place the parties in the relationship of employer, employee, partners, principal and agent, affiliates, or joint venturers. Consultant shall have no power, authority, or right to obligate ELI in any manner to any third party and Consultant shall not hold himself out as having such authority. Consultant shall not be entitled to any employee benefits of ELI and shall be solely responsible for payment of any and all Federal, State, local, or regional taxes imposed upon any payments to Consultant by ELI.

Publicity: Consultant shall not use names, logos, or other marks of ELI or or any of its affiliated companies in any publicity, advertising, or news release without the prior written consent of ELI.

Assignment: The agreement may not be assigned by Consultant but may be assigned by ELI.

| | |
|---|---|
| Law: | The agreement shall be construed in accordance with New York law. Any dispute under the agreement shall be resolved in the state or Federal courts in New York City, New York. Consultant irrevocably waives all objections to jurisdiction and venue in the state or Federal courts in New York City, New York. |
| Code of Conduct: | Consultant agrees that in his business interactions with ELI, including but not limited to performance of Consulting Services, he will conduct himself in accordance with the highest standards of professionalism and comply with ELI's Code of Conduct, with Consultant acknowledging that this is a condition of its continued retention by ELI. |

John Ademola

By: _____

Date: 7/28/10

Estee Lauder Inc.

By: _____
Harvey Gedeon
Executive Vice President, R&D

Date: 8/2/10

3

EXHIBIT A

Consultant's responsibilities shall include:

Procurement of premises acceptable to ELI for Testing Facility
Set up of Testing Facility
Installment of equipment in Testing Facility
Hiring of employees for Testing Facility
Training of employees to perform tests according to ELI's protocols and standards
Supervise Testing Facility employees in performing tests requested by ELI
Review all test results and reports prior to finalization
Visiting Testing Facility from time to time to oversee and supervise Testing Services
Addressing issues that arise with respect Testing Facility or Testing Services
Such other duties requested by ELI